DOWNING, J.
| ^Defendant, Cherokee Insurance Company, appeals from an amended judgment of the trial court, granting in part and denying in part its motion for summary judgment and granting the motion for summary judgment filed by plaintiffs, Gregory and Donna Triche. For the following reasons, we reverse in part and affirm in part.
FACTS AND PROCEDURAL HISTORY
On June 24, 2005, Gregory Triche and Dwight Martin were involved in an automobile accident in Little Rock, Arkansas. At the time of the accident, Triche was a passenger in a 1990 Chevolet SUV privately owned and operated by Martin. Triche and Martin, both residents of Louisiana, were independent truck owner/operators and had contracted with Central Hauling Company (“Central Hauling”) of Little Rock, Arkansas, to haul cargo and freight *650 across the country. Triche and Martin had also entered into lease-purchase agreements with Arkansas Equipment Leasing, Inc. of Mabelvale, Arkansas, for the lease-purchase of their trucks.
On the date of the accident, Triche and Martin left their trucks and trailers at the Central Hauling “yard” in Little Rock, Arkansas, and were going to get lunch in Martin’s personal vehicle while their trucks were being loaded. As Martin’s vehicle entered the interstate highway, another vehicle collided with it, causing Martin’s vehicle to flip several times, resulting in severe injuries to Triche. Martin did not have any insurance on his personal vehicle. However, Central Hauling had procured two policies from Cherokee Insurance Company (“Cherokee”) for its drivers, which were in effect at the time of the accident: (1) a 13Commercial Auto Liability Policy (CA050025); and (2) a Commercial NonTrueking Auto Liability Policy or “bobtail policy” (BT050007).[1]
On April 10, 2006, Triche and his wife, Donna, (hereinafter “plaintiffs”) filed the instant suit seeking to recover for injuries and damages sustained as a result of the accident. Thereafter, plaintiffs moved for summary judgment, contending that Triche was covered under the Cherokee policy and that the UM limits of $50,000.00 should be determined to be equal to the liability limits of $1,000,000.00, due to the lack of a knowing and intelligent waiver or selection by Triche of the lower $50,000.00 limits under Louisiana law.[2]
Cherokee countered with a cross-motion for summary judgment, contending that there was no UM coverage under the Cherokee policy available to the plaintiffs in this case. Alternatively, Cherokee contended that should the court find that there was UM coverage under the policy, any recovery would be limited to $50,000.00 as stated in the policy. Cherokee further contended that when considering the issue of UM coverage under Cherokee’s policy, the court should apply Arkansas law.
At the conclusion of a hearing, the trial court granted the motion for summary judgment in favor of plaintiffs and issued written reasons for judgment. | thereafter, a written judgment was signed on October 22, 2007 granting plaintiffs’ motion for summary judgment.[3]
*651 On January 3, 2008, the trial court signed an amended judgment in accordance with its October 22, 2007 judgment wherein it ordered: (1) that plaintiffs were not precluded from recovery against Cherokee’s bobtail policy pursuant to La. R.S. 22:680(i )(c)(ii)(bb), the Louisiana Anti-Stacking statute, as plaintiffs had returned an unconditional tender from State Farm in the amount of $50,000.00 and instead chose to seek recovery under Cherokee’s bobtail policy; (2) that Cherokee’s motion for summary judgment was granted in part, inasmuch as the court found that there was no coverage available under Cherokee’s Commercial Auto Liability Policy, but was denied to the extent that Cherokee sought judgment as a matter of law decreeing that plaintiffs were precluded from recovering under its bobtail policy; and (3) designating the judgment as final and appealable in accordance with La. C.C.P. art. 1915(B)(1).
Cherokee filed the instant appeal from the judgment of the trial court,[4] contending that the trial court erred in: (1) applying Louisiana law to the bobtail policy to change the UM limits from $50,000.00 to $1,000,000.00; (2) finding that Louisiana law applied, rather than Arkansas law, after conducting its conflicts of law analysis; and (3) finding that Triche had not already made a designation to | ^accept UWUIM funds from State Farm, and that he was not precluded under La. R.S. 22:680 and its anti-stacking provisions from making a claim against the Cherokee bobtail policy.
DISCUSSION

Standard of Review

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and “is designed to secure the just, speedy, and inexpensive determination of every action.” La. C.C.P. art. 966(A)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Walker v. Phi Beta Sigma Fraternity (Rho Chapter), 96-2345 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528. Thus, we must determine whether the documents introduced in evidence establish that plain *652 tiffs are entitled to judgment in their favor as a matter of law under the applicable substantive law. See Gray v. American Nat. Property & Casualty Co., 07-1670 (La.2/26/08), 977 So.2d 839, 844.
1 Assignments of Error Numbers One and Two
In these two assignments, Cherokee contends that the trial court erred in finding that Louisiana law applied herein rather than Arkansas law and in applying Louisiana law to erroneously determine that the UM policy limits are $1,000,000.00. We find merit in these assignments of error.
While the trial court conducted a thorough conflict-of-laws analysis in deciding to apply Louisiana law here, it committed legal error in so doing. It failed to properly interpret and apply the provisions of Louisiana’s uninsured/underinsured motorists (UM) law, former La. R.S. 22:680, which has been renumbered as La. R.S. 22:1295.[5] This statute provides in pertinent part:
The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(Z)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; ...
(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
(Emphasis added.)
|7We first note that “the statute is limited by the introductory language ... which states that the statute ‘shall apply to the issuance of uninsured motorist coverage in this state.’” Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773, 785-86. “The introductory language is clear and unambiguous and does not lead to absurd consequences.” Id., 893 So.2d at 786. Here, the policy under consideration was not issued for coverage in Louisiana. Second, section l(a)(i) of the statute limits its application to policies delivered or issued for delivery in Louisiana. Here, the policy under consideration was not delivered or issued for delivery in Louisiana. Third, section l(a)(iii) plainly states that the statute’s application is limited to accidents occurring “in this state” involving a resident of this state. The accident at issue did not occur in Louisiana.
“When interpreting a statute, all parts of a statute should be given effect, and an interpretation making any part superflu *653 ous or meaningless should be avoided.” Id. Accordingly, we conclude from the statute’s language that La. R.S. 22:1295 is not applicable to the policy at issue and that the trial court erred in employing Louisiana’s UM law to find coverage for the Triches.
Finding merit in Cherokee’s first and second assignments of error, we will accordingly reverse the summary judgment that granted the Triches’ motion for summary judgment. We will also reverse the judgment rendered in favor of the Triches that determined that they were not precluded from recovery against Cherokee under Louisiana’s UM law, La. R.S. 22:1295, under policy no. BT05007.[6]
lain so ruling, we observe that conflict-of-laws analysis can be appropriate in circumstances where an accident occurs in Louisiana involving Louisiana residents and out-of-state motorists. See Champagne, 893 So.2d at 786-88. But by the statute’s own terms, it is inapplicable to the matter before us.

Assignment of Error Number Three

In this assignment of error, Cherokee argues that plaintiffs are precluded from recovery against any other UM/UIM policy that plaintiffs may have access to because they had already elected to recover, “and have recovered,” $50,000.00 in UM7 UIM coverage from State Farm. We agree that the Triches were not entitled to entry of summary judgment on this issue.
As discussed above, La. R.S. 22:1295 is inapplicable to the matter before us. Accordingly, we conclude that the trial court erred in applying La. R.S. 22:1295(l)(c)(ii)(bb),[7] Louisiana’s anti-stacking provision, to the dispute over whether the Triches were entitled to return an unconditional tender and pursue a recovery under a different policy. ’ Accordingly, we will reverse the entry of summary judgment in favor of the Triches bn this issue, and we pretermit discussion of the merits of the issue.
DECREE
After our de novo review of the record, and considering the relevant law and jurisprudence, we conclude that the trial court erred in granting summary judgment in favor of the Triches, who were not entitled to summary judgment as a matter of law finding coverage under Cherokee’s bobtail policy. Thus, for the above and foregoing reasons, the January 3, 2008 amended judgment of the trial |9court and the November 22, 2007 judgment are reversed insofar as they grant recovery to the Triches on their motion for summary judgment. In all other respects the amended judgment is affirmed. Costs of this appeal *654 are assessed against Gregory and Donna Triche.
REVERSED IN PART; AFFIRMED IN PART.
GUIDRY, J., concurs.
WHIPPLE, J., dissents and assigns reasons.

. The “bobtail’' policy herein provided insurance coverage to owner/operators when they used their units for purposes other than business or hauling goods for Central Hauling, i.e., while on their way to and from home, or when traveling to a store. Although Central Hauling procured the bobtail coverage through its insurance broker, AON Risk Services, Inc., the weekly and monthly rate for the cost of the bobtail coverage was directly charged by Central Hauling to the individual owner/operators and was deducted from their pay each week.

. Plaintiffs' claims against the other defendants named in this matter, Lincoln General Insurance Company, CalArk International, Inc.’s insurer, and Slate Farm Mutual Automobile Insurance Company, Donna Triche’s UM insurer, were dismissed. Although State Farm unconditionally tendered $50,000.00 pursuant to Donna Triche's UM coverage under her automobile insurance policy, plaintiffs returned the tender and elected to pursue their claims against Triche’s UM coverage with Cherokee.

.After the October 22, 2007 hearing, Cherokee filed an application for supervisory writs with this Court seeking review of the trial court's grant of plaintiffs’ motion for summary judgment. On November 6, 2007, this Court denied Cherokee’s writ application, declining to exercise its supervisory jurisdiction under the criteria set forth in Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981). See Triche v. Martin, 2007 CW 2179 (unpublished writ action).

. We conclude that Cherokee also appeals here the October 22, 2007 judgment. The October 22, 2007 judgment was a partial final judgment pursuant to La. C.C. P. art. 1915 B that was not determined to be final and was' not certified as final. La. C.C.P. art. 1915 B(2) provides that in the absence of such determination and designation, any order or decision of the trial court "shall not constitute a final judgment for purposes of an immediate appeal.” Pertinently here, the article further provides that, "[a]ny such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.” The January 3, 2008 judgment states that it amends the October 22, 2007 judgment to make additional rulings on the same motions decided on October 22, 2007. Therefore, we consider and review the October 22, 2007 judgment as integrated into the January 3, 2008 judgment.

. By Acts 2008, No. 415, § 1, effective January 1, 2009, Title 22 of the Louisiana Revised Statutes was reenacted to redesignate the current provisions of Title 22 in to a new format and number scheme without changing the substance of the provisions. Pursuant to this reenactment, La. R.S. 22:680 was renumbered as La. R.S. 22:1295. For ease of reference, we will refer to the statute’s current number in this opinion.

. We note that Cherokee does not specifically appeal the denial of its motion for summary judgment on the issue of coverage under policy BT05007. And, a court of appeal does not have appellate jurisdiction to consider the denial of a motion for summary judgment. Hood v. Cotter, 08-0215, 08-0215 (La.12/2/08), 5 So.3d 819, 823: "An appeal does not lie from the court’s refusal to render any judgment on the pleading or summary judgment.” La. C.C.P. art. 968. Even though the same issue lies at the heart of the cross-motions motions for summary judgment, we decline to exercise our supervisory jurisdiction to review Cherokee’s motion. See Id.

. This subsection provided as follows:
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.